E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ANNE C. GANNON
Assistant United States Attorney
Chief, Santa Ana Branch Office
MELISSA S. RABBANI (Cal. Bar No. 283993)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
411 West Fourth Street, Suite 8000
Santa Ana, California 92701
Telephone: (714) 338-3500
Facsimile: (714) 338-3561
E-mail: melissa.rabbani@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>SIU KONG SIT,<br>Defendant. | No. SA CR 24-16-JWH<br><br>GOVERNMENT'S SENTENCING POSITION<br><br>Hearing Date: September 10, 2024<br>2:00 p.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Melissa Rabbani, hereby submits its position regarding sentencing.

The government's position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report ("PSR") and disclosed recommendation letter filed on July 12, 2024, and any other evidence or argument that the Court

may wish to consider at the time of sentencing.

Dated: August 27, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ Melissa S. Rabbani*
MELISSA S. RABBANI
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Until 2023, defendant Siu Kong Sit ("defendant") was a high school teacher in Irvine. While working as a teacher, defendant took advantage of his proximity to children to install hidden cameras in the school's bathrooms, which he used to record, download, and store pornographic images and videos of children and adults. A search of hard drives from those hidden cameras, as well as other devices found in defendant's home, revealed dozens of images and videos of child pornography.

Based on that conduct, defendant agreed to plead guilty to possession of child pornography and entered his plea earlier this year.

As set forth below, the government respectfully recommends that the Court impose a sentence of 180 months' custody, followed by a lifetime period of supervised release, and order a special assessment of $100. The government believes this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Finally, the government respectfully requests that the Court set a restitution hearing 60 days from the date of sentencing. The government anticipates that the parties may be able to file a stipulation as to restitution before that date.

**II. SUMMARY OF RELEVANT FACTS**

The facts below are taken from the plea agreement filed on February 8, 2024.

Beginning at least as early as February 2020, while employed as a teacher at Beckman High School in Irvine, California, defendant

began secretly installing hidden cameras in restrooms located at the high school. After installing the cameras, defendant regularly reviewed the videos captured by the cameras and downloaded the videos that were of interest to him. In addition, in or around May 2022, while serving as the high school robotics team coach, defendant placed a hidden camera in the restroom of a hotel room where minor students on the team were staying during a tournament in Texas. Between 2020 and 2023, defendant viewed and downloaded hundreds of images of children and adults, in various states of undress, using restrooms.

On February 27, 2023, after the cameras were discovered, several of defendant's digital devices were seized from his home in Orange County. Officers also seized two external hard drives from the cameras defendant had installed at the high school. A forensic review of those devices revealed dozens of images and videos of child pornography, including images and videos that defendant had recorded himself of children using restrooms in various states of undress.

In particular, a 128-GB storage drive taken from a camera installed at the high school contained at least 13 videos of child pornography, depicting seven identified victims. Each of those seven victims was under 18 at the time the videos were taken, and at least three of those seven victims were under 12 years old.[1]

A 64-GB storage drive taken from another camera installed at the high school contained at least seven videos of child pornography, depicting six identified victims. Each of those six victims was

---

[1] Defendant installed the cameras at or near the high school's aquatics center; the government understands that younger swimmers were often present at the aquatics center for swimming tournaments and other events.

under 18 at the time the videos were taken, and at least one of those victims was under 12 years old.

Defendant's main computer tower, seized from his home, contained at least 10 images of child pornography, depicting three identified victims – members of the high school robotics team – using the bathroom in their Texas hotel room. Each of the three victims was under 18 at the time the videos were taken.

Finally, a Seagate hard drive seized from defendant's home contained at least 22 images and one video of child pornography, including at least three images depicting a toddler engaged in sexual conduct.[2] A separate hard drive seized from defendant's home contained at least 150 images and four videos of child pornography.

Defendant agreed to plead guilty to possession of child pornography and entered his plea in March 2024.

**III. PRESENTENCE REPORT**

The USPO calculated the appliable Sentencing Guidelines separately for each of nine victims of defendant's production of child pornography. Pursuant to the parties' plea agreement, and Sections 1B1.2(a) and (c) of the United States Sentencing Guidelines, the USPO determined the base offense level for each victim to be 32. Dkt. 23 at 13-20. The USPO applied a two-level increase for each victim because of defendant's supervisory position and applied other variances based on each victim's age, resulting in offense levels of 34 to 38. Id. Applying a multiple-count adjustment, the USPO found that the combined adjusted offense level was 43, and after applying a

[2] Defendant does not appear to have produced or recorded these images himself.

three-level reduction for acceptance of responsibility, found a total offense level of 40. Id. at 20-21.

The USPO also determined that defendant's total criminal history score for this offense is zero, resulting in a criminal history category of I and a guidelines range of 292 to 365 months. Dkt. 23 at 22, 27. However, as the USPO points out, the statute of conviction has a maximum custodial sentence of 20 years. Id at 27.

The USPO recommends that the Court impose the statutory maximum sentence of 240 months' custody, followed by a lifetime period of supervised release. Dkt. 22.

## IV. THE GOVERNMENT'S POSITION

The government calculates the applicable Guidelines range differently. As set forth in the parties' plea agreement, the government believes the total offense level in this case is 38. The government agrees that defendant's criminal history category is I, resulting in a Guidelines range of 235 to 293 months' custody.

The government recommends that the Court impose a roughly three-level variance and sentence defendant to 180 months' custody, followed by a lifetime period of supervised release.

The government believes this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

### A. GUIDELINES RANGE

As set forth in the parties' plea agreement, the government believes that the base offense level in this case is 32 and that defendant is subject to the following adjustments: a two-level increase for content involving minors under age 16, a two-level increase based on defendant's supervisory position, a five-level

increase for the number of victims involved, and a three-level decrease for acceptance of responsibility. See Dkt. 8 at 15.

**B. NATURE, CIRCUMSTANCES, AND SERIOUSNESS OF THE OFFENSE**

The government submits that the nature, circumstances, and seriousness of defendant's offense warrant a substantial custodial sentence.

Defendant was a teacher. In that position, he was responsible for ensuring not only the academic education, but the safety and well-being of the students in his care. As one of his victims writes, "Schools are considered to be safe spaces to grow into young adults."[3] Defendant's students, and their families, placed their trust in him.

But defendant took advantage of that position of trust: he used his proximity to children to install hidden cameras, violating students' privacy and sexually exploiting them without their knowledge or consent. And now that his crime has been revealed, the impact of defendant's conduct has been staggering. One of defendant's victims writes that his "sense of safety has been destroyed," and that the degree of trauma he has experienced is "beyond words." The victim's mother describes "depression, anxiety, stress, [and] distrust," as well as "panic attacks, worry, fear[, and] hyper vigilance," adding that her son was forced to transfer out of his school district to escape the trauma inflicted by defendant.

Defendant's offense is incredibly serious. The harm he has caused is unquantifiable, and his victims undoubtedly will grapple with that harm well into adulthood.

[3] The government will file victim impact statements in this case under seal.

**C. DEFENDANT'S HISTORY AND CHARACTERISTICS**

Defendant has led a privileged life: he describes his childhood positively, characterizes his family relationships as "close" and "supportive," and appears to be in good overall physical health. Defendant excelled academically, graduating from the University of California at Berkeley, and for years maintained steady employment as a high school teacher in Irvine. Thus, whatever loneliness, anxiety, or difficulty "connecting" that defendant may have experienced, he had the education and resources to pursue therapy or other, healthier avenues than the one he chose.

On the other hand, aside from the offense conduct at issue, defendant appears to have led a law-abiding life, and he seems to have had no issues with compliance while on pretrial supervision. Moreover, to defendant's credit, he admitted to his conduct and accepted responsibility for his actions in this case quickly. And while his actions in this case are no doubt abhorrent, there is no evidence that defendant engaged, or attempted to engage, in any contact offenses with any of his students.

Given defendant's history and characteristics – in particular, his lack of criminal history, and immediate acceptance of responsibility - the government believes that a sentence below the Guidelines range of 235 to 293 months is appropriate in this case.

**D. SUPERVISED RELEASE**

The government recommends that the Court impose a lifetime period of supervised release. Congress explained when amending 18 U.S.C. § 3583 that "[s]tudies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes. Moreover, the recidivism rates do not appreciably decline as

offenders age . . . . While any criminal's subsequent re-offending is of public concern, preventing sexual offenders from re-offending is particularly important, given the irrefutable and irreparable harm that these offenses cause victims and the fear they generate in the community." H.R. Rep. 107-527. Here, despite his lack of prior criminal history, there is a significant risk that defendant will reoffend once released from custody.

**E. FINANCIAL OBLIGATIONS**

1. JVTA $5,000 ASSESSMENT

Under the Justice for Victims of Trafficking Act of 2015 (the "JVTA"), the Court "shall" impose a $5,000 assessment on any non-indigent person convicted of an offense in Chapter 110, like defendant's crime. 18 U.S.C. § 3014(a)(3). Here, the government agrees that defendant has demonstrated an inability to pay any such assessment, and recommends that no assessment be ordered under the JVTA. See Dkt. 22 at 1.

2. AVAA $15,000 ASSESSMENT

Under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (the "AVAA"), "[i]n addition to any other criminal penalty, restitution, or special assessment authorized by the law, the court shall assess . . . not more than $17,000 on any person convicted of an offense" for possession of child pornography. 18 U.S.C. § 2259A(a)(1) (emphasis added). "In determining the amount of the assessment . . . , the court shall consider the factors set forth in sections 3553(a) and 3572." Id. Here, the government agrees that defendant has demonstrated an inability to pay any such assessment, and recommends that no assessment be ordered under the AVAA. See Dkt. 22 at 1.

3. RESTITUTION

Again, the government respectfully requests that the Court set a restitution hearing 60 days from the date of sentencing; the government anticipates that the parties may be able to file a stipulation as to restitution before that date.

**V. CONCLUSION**

As set forth above, the government respectfully recommends that the Court impose a sentence of 180 months' custody, to be followed by a lifetime period of supervised release, and a mandatory special assessment of $100. The government submits that this sentence is sufficient, but not greater than necessary, to punish defendant, promote respect for the law, deter defendant from committing similar crimes in the future, and avoid sentencing disparities. See generally 18 U.S.C. § 3553(a).